# Czinger Declaration

# Exhibit A

# Sharon Liu

| | |
|---|---|
| **Subject:** | Fwd: draft agreement between Alopex and your comopany |
| **Attachments:** | signature.asc; V01DRAFT-engagement_letter.pdf |

---------- Forwarded message ---------
发件人： **Matthew B. Czinger** <mczinger@alopexadvisors.com>
Date: 2022 年 9 月 7 日周三 16:28
Subject: draft agreement between Alopex and your comopany
To: Lei Chen <chenl3396@gmail.com>
Cc: Teresa Chiao <tchiao@om3capital.com>


Charles- I have attached the draft of our engagement agreement. I want to highlight that it is a "raw" draft for discussion purposes in order to proceed as expeditiously as possible. There may be additional changes and, of course, there is the question of which company of yours is best/ available for use.

It has incorporated the elements we have discussed via chat, call, and in

1

person over the past month(s).

Teresa should be flying out today and landing in Iceland very soon. We can work through the doc together then and solidify something that allows us to best proceed forward.

Thank you.

--
Matthew B. Czinger
Founder & CEO
Alopex Advisors, LLC

email: mczinger@alopexadvisors.com
phone: +1 212 390 1090
https://www.alopexadvisors.com

This communication may contain confidential/ proprietary information. It is intended only for the person(s) to whom it is addressed. If you are not the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is not permitted. If you have received this communication in error, please notify info@alopexadvisors.com immediately by email and delete/ destroy the original message, together with any and all copies in your possession. Views expressed in this email do not necessarily reflect the views of Alopex Advisors, LLC. All emails sent to, or received from, this address will be received by the Alopex Advisors, LLC corporate email system and are subject to archival and review by someone other than the recipient.

Ref.: Project California



# LETTER OF ENGAGEMENT

This Letter of Engagement (the Agreement) is made and entered into as of *September 7, 2022* (the Effective Date) by and between:

> ALOPEX ADVISORS, LLC—located at 430 Park Avenue, Floor 19, New York, NY, 10022 in the United States of America—represented by "First Party" or "Alopex" and

> CHARLES COMPANY TBD on behalf of BIXCO (EXACT ENTITY NAME)—located at ADDRESS in COUNTRY—represented by "Second Party" or "CHARLESCO".

Hereinafter, CHARLESCO and Alopex may sometimes be individually referred to as "Party" and collectively as "Parties".

## 1. CONSULTING RELATIONSHIP

1.1. **Purpose.** Alopex and CHARLESCO have discussed and endeavor toward the procurement and/ or purchase of sufficient energy, transmission, storage, and/ or hosting for Bitcoin (or other crypto-currency) mining units. CHARLESCO is endeavoring to procure this on behalf of BIXCO as BIXCO terminated its project with Alopex in light of KYC rejections by banks in Iceland and the European Economic Area (EEA). CHARLESCO has received initial indication that it may pass the KYC processes where BIXCO failed and Alopex hopes to help BIXCO, via CHARLESCO, achieve its goals for this project.

In the process of these discussions, Alopex will need to disclose proprietary information, details of partnerships, introduce CHARLESCO to relevant parties, share financial models, and/ or, but not limited to, share prospective financing strategies and/ or contracts that are integral to the functioning of Alopex as a business and to this Transaction (§1.2).

CHARLESCO has conveyed an interest in establishing a relationship with Alopex whereby CHARLESCO will review, analyze, and discuss pertinent Confidential Information, speak to the aforementioned parties, and all other "due diligence" necessary to potentially further or consummate the Transaction.

1.2. **Transaction.** CHARLESCO, potentially in syndication with another investor, investors, and/ or partners, will provide a minimum amount of mining units (the Miners) in order to utilize 85% of the available power provided under this Agreement and will deliver them to a Facility (§1.3.1). Alopex, or an Affiliate (§5.2) of Alopex, will provide the requisite Services (§1.3) for the operation of the Miners.

1.3. **Services.** During the term of this Agreement, Alopex will provide the following services (the Services) to CHARLESCO for operation of the Miners:

1.3.1. *Physical Premises.* A Facility (which may be one or more individual structures) will be a plain steel-frame building and is sufficiently adequate, in size and function, for the purposes of this Transaction and provided by a mining Host (e.g., Borealis Data Center). A proposed Facility may require cleaning and conversion in order to adequately house the Miners. CHARLESCO may elect to construct or convert its own facility. CHARLESCO is entitled to, from time to time, appoint representatives to confirm physical conditions of the Facility on site before arranging delivery of units and will provide to Alopex one (1) calendar week notice before any such visit.

1.3.2. *Entire Premises.* No entity other than CHARLESCO will be authorized to locate, install, or operate bitcoin mining units at a Facility without explicit and written authorization of CHARLESCO in the event CHARLESCO chooses to construct or convert its own Facility.

Ref.:   Project California                                                          *Letter of Engagement*

1.3.3. *Location.* All of the Miners will be located within the country of Iceland, unless agreed upon in writing by and between Alopex and CHARLESCO.

1.3.4. *Timing of Installation.* Except in instances where CHARLESCO utilizes a Host, CHARLESCO shall be responsible for providing requisite materials and cabling for install of the Miners and shall be responsible for "power on" and operations of the Miners.

1.3.5. *Power.* The Power Provider (i.e., HS Orka) will provide electricity to power the Miners. It is provided at 230V current. Electricity is provided without UPS and it will be furnished to the shelves/ racks. The obligation of a Facility to provide sufficient power shall be subject to the rules and regulations of the supplier of such electricity and of any governmental authorities.

For avoidance of doubt, CHARLESCO will not be billed for any power during a power interruption resulting in the non-operability of the Miners.

For any interruptions of power greater than twenty-four (24) hours, CHARLESCO will not be billed for Services for those days.

A minimum of 90% (ninety percent) of the energy provided will be from renewable or sustainable sources.

1.3.6. *Ventilation and Cooling.* Direct air cooling is used in Iceland with or without advanced filtering in the Facility. Given the climate conditions at the Facility, this may be sufficient to meet the temperature and humidity targets of the hosted hardware. Additional cooling or filtration needs may be constructed by CHARLESCO.

1.3.7. *Management.* Management and operation of the Miners, once installed, is the sole responsibility of CHARLESCO or a Host.

1.3.8. *Visas.* For all non-Icelandic personnel required in §1.3.7, Alopex will aid and assist, to the best of its ability, in procuring the necessary working permits and visas.

1.3.9. *Promotion and Marketing.* Promotion and marketing for the term of this Agreement is the sole responsibility of CHARLESCO. For avoidance of doubt, Alopex authorizes CHARLESCO to market in China. Any media that is broadcast in North America or Europe must be approved, in writing, by Alopex—such approval will not be unreasonably withheld. Any media, globally, that includes mention of Alopex or uses Alopex's name, logo, or the names of Alopex's agents must be approved, in writing *a priori*, by Alopex.

1.3.10. *Additional Services.* CHARLESCO will be solely responsible for: (i) all additional emergency, supplemental, or backup power systems for use within the Facility; (ii) all replacement electrical cabling, fuses, and division within the Facility from the relevant electrical switch located at the shelves/ racks; (iii) all additional emergency, supplemental, or backup heating, ventilating, or air conditioning systems for use in the Facility; (iv) any enhanced air filtering of the input air; and/ or (v) any and all services above and beyond the Services delineated in §§1.3.1–1.3.9 that are specifically requested by CHARLESCO.

1.4. **Best Efforts.** Alopex shall use its best efforts to perform the Services. CHARLESCO has indicated to Alopex that CHARLESCO (or any of its Affiliates) has an interest in and ability to effectuate the Transaction.

1.5. **Non-Conflict.** Alopex is an independent contractor (§7) and as such may also consult for other clients on projects other than, but not in direct or indirect conflict with, this Transaction. BIXCO is aware of this Transaction, consents to it, and waives conflict with CHARLESCO and Alopex. The owner of CHARLESCO is affirming and confirming this as an executive and agent of BIXCO. In the event BIXCO contests or withdraws such consent, Alopex shall suspend its services to CHARLESCO until such time as the contest or withdrawal is rectified.

Ref.:  Project California                                                        *Letter of Engagement*

## 2. PAYMENT AND FEES

2.1. **Invoice.** Upon delivery of the Miners to a Facility, Alopex will provide a monthly invoice to CHARLESCO on the first of every calendar month for the Services rendered in the previous calendar month. In addition, if necessary, Alopex will provide a separate monthly invoice to CHARLESCO on the first of every calendar month for additional services—mutually agreed upon in writing *a priori*—rendered. In the event CHARLESCO utilizes a Host, Alopex may elect to allow direct billing and payment with said Host.

Payment will be due within ten (10) calendar days.

2.1.1. *Paymaster.* Alopex may elect to utilize a third-party paymaster (the Paymaster) for effectuation of invoice payment for power, hosting services, and/ or Alopex's fees. Alopex's fees shall be fulfilled in first priority above any distributions by the Paymaster. The domicile of the Paymaster will be either Iceland or the United States. Any Paymaster costs shall be solely borne by CHARLESCO.

2.2. **Schedule of Fees.** Alopex's fee for the Services is mutually agreed to be $3.00/MWh (three US dollars and no US cents) per megawatt hour billed to CHARLESCO for power, operation, and/ or hosting of the Miners (the Fee).

2.3. **Security Deposit.** Alopex typically requires a security deposit (the Security Deposit). Alopex shall not require the Security Deposit from CHARLESCO.

2.4. **BIXCO Security Deposit.** The amount of the Bixin Security Deposit earned under the previous engagement agreement for this project is $4,000,000.00 (four million US dollars and no US cents).

2.4.1. *Profit Waiver.* At every billing cycle, Alopex shall account its previous month's Fee and the cumulative Fee owed to Alopex in this Transaction. Alopex shall waive its Fee until such time as the cumulative Fee reaches the lesser of the Bixin Security Deposit or the Reduced Security Deposit (§2.4.2)—the Fee Hurdle. After such time as the Fee Hurdle is exceeded, Alopex shall receive any and all Fee for its Services as described in this Agreement.

2.4.2. *Reduced Security Deposit.* At Alopex's sole discretion, Alopex may elect to utilize a portion of the Bixin Security Deposit toward the purchase of miners, hosting fees with a Host, and/ or construction of a Facility. If so, it shall notify CHARLESCO in writing and any amounts distributed shall be deducted from the Bixin Security Deposit amount resulting in the Reduced Security Deposit amount (for example, if Alopex were to allocate $1,000,000.00 [one million US dollars and no US cents] for the project, the Reduced Security Deposit would be $3,000,000.00 [three million US dollars and no US cents]).

2.5. **Bank of Record.** The bank of record for Alopex is the Bank of America, NA in the United States of America.

2.6. **Paymaster.** Alopex may elect to utilize a third-party paymaster (the Paymaster) for effectuation of invoice payment for power and/ or Alopex's fees. Alopex's fees shall be fulfilled in first priority above any distributions by the Paymaster. The domicile of the Paymaster will be either Iceland or the United States.

2.7. **Proof of Funds.** CHARLESCO or its Affiliate(s) will provide prepayment of one month of an estimated electricity bill prior to the first month of the start of electricity power service as the deposit or proof of Funds. Alopex's shall assist in coordinating and representing CHARLESCO's interest in negotiating and demonstrating proof of funds as part of CHARLESCO's local team.

2.8. **Late Payment.** Any amounts owed and not paid according to the schedule outlined in §2.2 shall bear daily, prorated interest at a rate of 5% (five percent) per annum. If payment is more than ten (10) calendar days late, Alopex reserves the right to suspend provision of the Services until such payment is received.

Ref.: Project California                                                    *Letter of Engagement*

2.9. **Currency.** All fees will be paid in US Dollars (USD) or, if agreed between the Parties, an equivalent amount at the spot exchange rate on the date of each requisite payment in one of the following currencies: Euros (EUR), Canadian Dollars (CAD), Hong Kong Dollars (HKD), Pounds Sterling (GBP), or Swiss Francs (CHF). Any fees or discrepancies for conversion of foreign exchange into the currency of a PPA (typically USD or EUR) or contract with a Host (typically USD) shall be borne by CHARLESCO.

2.10. **Method of Receipt.** Alopex will immediately provide to CHARLESCO the requisite details of the Escrow Agent, if necessary, for acceptance of payment via wire-transfer.

Additionally, Alopex will provide to CHARLESCO the requisite details for Alopex's acceptance of payment via wire-transfer.

## 3. TERM AND TERMINATION

3.1. **Term.** The Alopex shall serve as an exclusive consultant in Iceland to CHARLESCO for a period commencing on the date of this Agreement and ending five (5) calendar years from the date of the first invoice submitted to CHARLESCO, unless extended by the Parties.

3.2. **Termination.** With due observance of §3.1, CHARLESCO or Alopex may terminate this Agreement at any time with a minimum of ten (10) calendar days' written notice, however not prior to the expiry of the period defined in §3.1.

3.3. **AML and KYC.** If CHARLESCO is denied the ability to create an operating business entity in Iceland and/ or a European Economic Area country, is denied the ability to create a bank account for the effectuation of this Transaction in Iceland and/ or a European Economic Area country, or is denied the ability to execute a Power Purchase Agreement in Iceland due to the failure of CHARLESCO in passing standard anti-money laundering and/ or banking KYC (know-your-customer) procedures by the requisite counterparty, this will constitute an event of default by CHARLESCO. In the event of such default, Alopex may, at its sole discretion, terminate this agreement immediately without penalty.

## 4. CONFIDENTIALITY AGREEMENT

4.1. **NDA.** The Parties, on June 29, 2021, both signed a Mutual Non-Disclosure and Non-Circumvention Agreement (the NDA), which is on or before the date the Alopex began providing the Services.

## 5. NON-CIRCUMVENTION

5.1. **Non-Circumvention.** Each Party, inclusive of any Affiliates, (the Non-Circumventing Party) agree that, during the Term (§3) of this Agreement and for two (2) calendar years from any termination hereof, it will not circumvent or attempt to circumvent any business interest of the other Party (each, the Non-Circumvented Party) by soliciting, dealing with or attempting to deal with, directly or indirectly, any party, referral or lead introduced or disclosed to the Non-Circumventing Party by the Non-Circumvented Party, for the purpose of establishing a business relationship in competition with the Non-Circumvented Party pursuant to this Transaction. To wit, any new or expansion projects by CHARLESCO in Iceland shall be bound by this clause.

5.2. **Affiliates.** Affiliates also include companies and individuals affiliated with any party described in this Agreement. For the purposes of this Agreement, Affiliate shall mean a person that directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, the Party specified.

## 6. EXPENSES

6.1. **Alopex's Expenses.** Alopex shall not be authorized to incur on behalf of CHARLESCO any expenses and will be responsible for all own expenses incurred while Alopex performs the Services.

6.2. **CHARLESCO's Expenses.** CHARLESCO shall not be authorized to incur on behalf of Alopex any expenses and will be responsible for all own expenses incurred while Alopex performs the Services.

Ref.: Project California                                                                                         *Letter of Engagement*

6.3. **Reimbursement.** As CHARLESCO's contractor and partner for this Transaction, any expense related to CHARLESCO's service executed by Alopex requires pre-approval before execution. Pre-approval requires details of Service items, estimated cost, and dates. If the expense request is approved by one of CHARLESCO's authorized agents, execution of activity-related expenses is allowed within the approved amount. After execution of expense items, request of reimbursement needs to be filed by Alopex with the pre-approval and receipt attached. All expenses are based on actual expense invoice without any markup fees added by Alopex.

## 7. INDEPENDENT CONTRACTOR

7.1. **Relationship.** Alopex's relationship with CHARLESCO will be that of an independent contractor, partner for the benefit of CHARLESCO insofar as representing CHARLESCO's interests in Iceland, and not of an employee. Nothing in this Agreement shall be interpreted as creating or establishing an employment relationship between CHARLESCO and Alopex.

7.2. **Method of Provision of Services.** Alopex, with the express advice and consent of CHARLESCO, shall be responsible for determining the method, details, and means of performing the Services. However, at all times, Alopex shall be represented by Mr. Matthew B. Czinger.

7.3. **No Authority to Bind Alopex.** CHARLESCO acknowledges and agrees that CHARLESCO and its Affiliates have no authority to enter into contracts that bind Alopex, nor create obligations on the part of Alopex.

7.4. **No Authority to Bind CHARLESCO.** Alopex acknowledges and agrees that Alopex and its Affiliates have no authority to enter into contracts that bind CHARLESCO, nor create obligations on the part of CHARLESCO.

7.5. **No Benefits.** Alopex acknowledges and agrees that the Alopex shall not be eligible for any CHARLESCO employee benefits, and save for the express terms of this Agreement, the Alopex expressly decline to participate.

7.6. **Withholding Indemnification.** Alopex shall have full responsibility for applicable withholding taxes for all compensation paid to Alopex under this Agreement.

## 8. MISCELLANEOUS

8.1. **Amendments and Waivers.** Any term of this Agreement may be amended or waived only with the written consent of the Parties hereto.

8.2. **Sole Agreement.** This Agreement, including the sub-clauses hereto, and save for the stipulation in §4, constitutes the sole agreement of the Parties for advisory services with respect to the Transaction as described in §1.2 and supersedes all oral negotiations and prior writings.

8.3. **Assignment.** The Parties to this Agreement shall have the right to assign this Agreement with the written consent of the other Party—such consent not to be unreasonably withheld. In the event that any Party makes such an assignment, the Party shall be relieved and released from any and all of all responsibility and liability under this Agreement provided the assignee agrees to accept such responsibility and liability.

8.4. **Notices.** Any notice required or permitted by this Agreement shall be in writing and shall be deemed sufficient upon receipt, when delivered personally or by overnight delivery service if such notice addressed to the Party to be notified at such Party's address as set forth above, or as subsequently modified by written notice.

8.5. **Choice of Law.** The validity, interpretation, construction, and performance of this Agreement shall be governed and construed in accordance with Hong Kong law, and any legal action or arbitration shall be brought in Hong Kong SAR, without giving effect to the principles of conflict of laws. The Parties hereby agree to the jurisdiction of said courts.

8.6. **Arbitration.** Any dispute, controversy, or claim arising out of or in connection with this contract, or the breach, termination, or invalidity thereof, shall be finally settled by arbitration administered by the Hong Kong International Arbitration Centre.

Ref.:  Project California                                    *Letter of Engagement*

8.6.1.   The seat of arbitration shall be Hong Kong SAR.

8.7. **Language.** The language to be used in all contracts, agreements, and any arbitral proceedings shall be English.

8.8. **Severability.** If one or more provisions of this Agreement are held to be unenforceable under applicable law, the Parties agree to renegotiate such provision in good faith. In the event that the Parties cannot reach a mutually agreeable and enforceable replacement for such provision, then:

8.8.1.   such provision shall be excluded from this Agreement;

8.8.2.   the balance of the Agreement shall be interpreted as if such provision were so excluded; and

8.8.3.   the balance of the Agreement shall be enforceable in accordance with its terms.

8.9. **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together will constitute one and the same instrument.

8.10. **Advice of Counsel.** Each Party acknowledges that, in executing this Agreement, such Party has had the opportunity to seek the advice of independent legal counsel, and has read and understood all of the terms and provision of this Agreement. This Agreement shall not be construed against any Party by reason of the drafting or preparation thereof.

8.11. **Headings.** The headings in this Agreement are for convenience only and shall not be used to interpret or construe any provision in this Agreement.

## IN WITNESS WHEREOF

This Agreement has been signed by the parties hereto on the Effective Date stated on page one.

_____          _____
Mr. Matthew B. Czinger                                    Mr. Lei Chen (陳雷)
*Founder & CEO*                                                *Position:*
Alopex Advisors, LLC                                          CHARLESCO, BIXCO