UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BLUE AXIS GLOBAL LTD and LONGBYTE INC.,

            Petitioners,

            v.

ALOPEX ADVISORS, LLC,

            Respondent.

24-MC-508 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Blue Axis Global Ltd. and Longbyte, Inc. ("Petitioners") are engaged in a pending arbitration against Respondent Alopex Advisors, LLC ("Alopex") in the Hong Kong International Arbitration Centre (the "Arbitration"). Before the Court is Petitioners' motion to confirm a Temporary Order of Attachment in Aid of Arbitration, which the Court issued on November 13, 2024. For the reasons that follow, the motion is denied.

## BACKGROUND[1]

The Court assumes the parties' familiarity with the facts of this case and will not recite them in full here. In brief, Petitioners are part of a group of affiliated entities known as Bixin Group ("Bixin"), which operates in the cryptocurrency industry. In mid-2021, in an effort to pursue a cryptocurrency mining project in Iceland (the "Project"), Bixin retained the services of Alopex, whose principal, Matthew Czinger, has extensive experience in the Icelandic energy market. On August 18, 2021, Bixin and Alopex executed a Letter of Engagement (the "Original LOE") that set forth the terms pursuant to which Alopex would provide services to Bixin in support

---

[1] The following facts are generally not in dispute, and are drawn from the parties' submissions, which include much of the arbitral record to date. *See* ECF Nos. 21 ("Chen Decl."), 22 ("Yin Decl."), 34 ("Hargrove Decl."), 35, 40.

of the Project.  *See* Chen Decl., Ex. A.  As part of the Original LOE, Bixin agreed to pay a $4,000,000 security deposit that would be used to "secure the site" of the Project (the "Security Deposit").  Original LOE § 2.4.  Pursuant to the Original LOE, the Security Deposit would be "immediately deemed earned by Alopex" upon payment and would be refundable solely on the basis set forth in section 2.4.6 of the Original LOE, *see id.* § 2.4.1, which provided for a gradual return of the Security Deposit as the size of Bixin's investment in the Project increased, *see id.* §§ 2.4.5, 2.4.6.

On September 17, 2021, Bixin and Alopex executed an amendment to the Original LOE (the "Amended LOE").  *See* Chen Decl., Ex. B ("Am. LOE").  The Amended LOE altered the conditions attached to the Security Deposit such that it would also be refundable on the basis set forth in section 2.8 of the Amended LOE.  *See* Am. LOE § 2.4.1.  Section 2.8 required Alopex to provide, among other things, "a definitive written power purchase, power sublease, or similar agreement between Bixin and the power provider of the Facility by or within thirty (30) calendar days of confirmation of full payment of the cash Security Deposit."  Am. LOE § 2.8.  In the event that Alopex failed to timely perform "whether due to the fault of Alopex or an uncured Force Majeure Event," Bixin was entitled to the immediate return of the Security Deposit.  *Id.*  However, Alopex's nonperformance would be excused—and thus Bixin would not be entitled to the return of the Security Deposit—if Bixin "negotiate[d] with the Power Provider in bad faith, with[eld] documents, with[eld] cooperation, unduly delay[ed] its or Alopex's performance, and/or fail[ed] to provide Alopex with the requisite information or aid necessary to finalize a Power Purchase Agreement between Bixin and the Power Provider."  *Id.*

Bixin paid the Security Deposit into escrow on October 14, 2021, *see* Chen Decl., Ex. C, and thus section 2.8 of the Amended LOE required Alopex to provide a Power Purchase

2

Agreement ("PPA") by November 13, 2021. Although Alopex failed to do so, the parties continued to pursue the Project. As time went on, however, Bixin repeatedly failed to complete the steps necessary to begin the Project. In particular, Bixin did not incorporate a suitable entity within the European Economic Area and had difficulty passing the "Know-Your-Customer" and Anti-Money Laundering checks required to open bank accounts and engage with power providers. In February 2022, after the Project had stalled for several months, Alopex liquidated the Security Deposit from the escrow account. On April 12, 2023, after more than a year of negotiation between the parties regarding the Security Deposit and a potential new project, Petitioners commenced the Arbitration before a sole arbitrator, seeking the return of the Security Deposit. As of the date of this Opinion, a decision in the Arbitration remains pending.

On November 6, 2024, to secure satisfaction of a potential award in the Arbitration, Petitioners filed an *ex parte* petition with this Court for a Temporary Order of Attachment pursuant to New York Civil Practice Law and Rules § 6211(a) ("CPLR"). The Court granted the *ex parte* petition on November 13, 2024, and ordered Petitioners to promptly serve Alopex with the Temporary Order of Attachment and to file a motion to confirm the same pursuant to CPLR § 6211(b).[2] *See* ECF No. 13. Petitioners filed the instant motion to confirm on December 4, 2025, *see* ECF No. 18, which Alopex opposed on December 20, 2024, *see* ECF No. 33. Petitioners filed a reply on January 2, 2025. *See* ECF No. 38. The parties' submissions include a substantial portion of the arbitral record.

**LEGAL STANDARD**

The Federal Rules of Civil Procedure permit a court to order attachment "under the law of

---

[2] On December 5, 2025, Petitioners advised the Court that the bank account subject to the Temporary Order of Attachment contained only a few hundred dollars, and thus filed a motion seeking disclosure pursuant to CPLR § 6620 to identify Alopex's other assets. The Court reserved decision on that motion pending its resolution of the instant motion. *See* ECF No. 32.

3

the state where the court is located." Fed. R. Civ. P. 64. Under New York law, attachment is available pursuant to Article 62 of the CPLR. "[T]o obtain an order of attachment and to confirm an *ex parte* order of attachment, the petitioner bears the burden of establishing that; (1) there is a cause of action; (2) it is probable that the plaintiff will succeed on the merits; (3) a ground for attachment exists; and (4) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." *Swift Splash Ltd. v. Rice Corp.*, No. 10-CV-6448, 2010 WL 3767131, at *2 (S.D.N.Y. Sept. 27, 2010); *see* CPLR § 6212(a). The party seeking attachment "bears a heavy burden in attempting to establish its right to an attachment[,] because New York attachment statutes are construed strictly against those who seek to invoke the remedy." *Id.*[3] Where the statutory factors are satisfied, the decision "whether to grant an attachment rests within the discretion of the court." *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F.4th 263, 271 (2d Cir. 2022).

## DISCUSSION

As a threshold matter, the parties do not dispute that the first and fourth statutory elements are satisfied. There is a cause of action—the Arbitration, *see* CPLR § 7502(c) ("arbitration shall be deemed an action for [the] purpose" of Article 62)—and Alopex has not asserted any counterclaims in the Arbitration, *see* Yin Decl. ¶ 16. Alopex argues that Petitioners have failed to demonstrate both a probability of success on the merits and a valid ground for attachment. Because the Court concludes that Petitioners have failed to demonstrate a probability of success on the merits, it need not reach the latter question.

### I. Probability of Success on the Merits

"On a motion for attachment in aid of arbitration, probability of success is measured in terms of the likelihood of success in arbitration," *Iraq Telecom*, 43 F.4th at 269–70, and thus the

---

[3] Unless otherwise indicated, this opinion and order omits all internal quotation marks, citations, footnotes, omissions, emphases, and alterations in quoted text.

4

party seeking attachment "must demonstrate that it more likely than not will succeed on any one of its claims," *Discover Growth Fund v. 6D Glob. Techs. Inc.*, No. 15-CV-7618, 2015 WL 6619971, at *4 (S.D.N.Y. Oct. 30, 2015); *see also Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*, No. 11-CV-04971, 2011 WL 6957595, at *4 (S.D.N.Y. Dec. 28, 2011). As the Second Circuit has noted, "[w]here an arbitration is pending, probability of success cannot be predicted with the confidence a court would have in predicting the merits of a dispute awaiting litigation in court because arbitration is frequently marked by great flexibility in procedure, choice of law, legal and equitable analysis, evidence, and remedy." *Iraq Telecom*, 43 F.4th at 270. "Even so, the plaintiff must be given the benefit of all legitimate inferences and deductions that can be made from the facts stated." *Id.*

Here, the probability that Petitioners will succeed in the Arbitration depends in large part on the tribunal's interpretation of the LOE. Hong Kong law, which governs the LOE, employs the familiar rule that "[w]here the parties have used unambiguous language, the court must apply it." Yin. Decl. ¶ 33.[4] Thus, to the extent that the relevant provisions of the LOE are unambiguous, the Court interprets them according to their plain meaning.

Bixin paid the Security Deposit on October 14, 2021, and thus section 2.8 of the Amended LOE required Alopex to provide a PPA by November 13, 2021. It is undisputed that Alopex failed to do so. Petitioners argue that this failure constituted a breach that entitles them to the return of the Security Deposit. In response, Alopex argues that Bixin's delay in establishing the requisite entities and bank accounts prevented it from obtaining a PPA. Accordingly, the outcome of the Arbitration will likely depend on whether Bixin's conduct in the thirty days following the payment

---

[4] Pursuant to Federal Rule of Civil Procedure 44.1, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."

of the security deposit excused Alopex's nonperformance under section 2.8 of the Amended LOE.

Upon review of the Arbitration record, the Court concludes that Alopex's failure to timely provide a PPA was more likely than not the result of Bixin's conduct. The record suggests that the parties intended the LOE's thirty-day period to provide Alopex time to secure the sublease of an existing PPA (as opposed to an entirely new PPA), that Alopex began the process of negotiating such a sublease during that period, and that—had Bixin been ready to invest—thirty days would have been sufficient time to execute the sublease transaction. *See* Yin Decl., Ex. 5 at ¶ 8, Ex. 7 at ¶¶ 16–18; Hargrove Decl., Ex. A at 32, Ex. B at 36–40. Ultimately, however, although Bixin represented that it had the "ability to effectuate the Transaction," Original LOE § 1.4, the record suggests that Alopex was forced to delay its efforts beyond the thirty-day period because Bixin had not yet taken a critical step necessary to enable Alopex to secure a PPA: incorporating a suitable entity in the European Economic Area, *see* Hargrove Decl., Ex. A at 36, Ex. B at 3, 36–40; Yin Decl., Ex. 6 at ¶ 60–62. Alopex cannot reasonably have been expected to provide a "definitive" PPA between a power provider and a nonexistent entity; indeed, such a PPA would have been neither "definitive" nor an "agreement." *See* Hargrove Decl., Ex. B at 39 (Czinger testifying in the Arbitration that power providers "don't put together a power purchase agreement with a nebulous, hopeful entity. They put it together with a formal counterparty, and Bixin did not have a formal counterparty."). In the Court's view, Bixin's failure to timely incorporate an entity on behalf of which Alopex could secure a PPA "unduly delay[ed]" Alopex's performance and constituted a "fail[ure] to provide Alopex with the requisite information or aid necessary to finalize" a PPA. Am. LOE § 2.8. Accordingly, Petitioners have not met their burden of establishing a likelihood of success on their claim that Alopex breached the LOE.

The Court similarly concludes that Petitioners have not met their burden of establishing a

likelihood of success on their equitable theories of breach of a *Quistclose* trust and unjust enrichment. "A *Quistclose* trust is a legal arrangement under Hong Kong law where a person or entity is given money or property with the expectation that it will be used for a specific purpose. If the money is not used for that purpose, a court treats the recipient as holding the money on trust for the payor." Yin Decl. ¶ 82. Petitioners argue that the payment of the Security Deposit created a *Quistclose* trust because the Original LOE provided that Alopex required the Security Deposit to "secure the Site" for the Project. Original LOE § 2.4; *see also id.* § 1.3.3. In the Court's view, however, the Amended LOE did not require Alopex to use the Security Deposit for the specific purpose of acquiring land for the Project. Rather, the Security Deposit was "immediately deemed earned by Alopex" and, as relevant here, was intended to guarantee Alopex's performance of the various obligations imposed by section 2.8. *See* Am. LOE §§ 2.4.1, 2.8. It is therefore unlikely that the payment of the Security Deposit established a *Quistclose* trust.

Petitioners' contention that Alopex's retention of the Security Deposit constitutes unjust enrichment is also unlikely to succeed. Under Hong Kong law, an unjust enrichment claim must fail if it "would undermine the contractual arrangements between the parties." Yin Decl., Ex. 3 ¶ 84. Given the clear language of the Amended LOE, a finding of unjust enrichment would do just that.

Accordingly, the Court concludes that Petitioners are unlikely to succeed on any of their claims and have failed to demonstrate a probability of success in the Arbitration. The motion is thus denied.

## CONCLUSION

For the reasons stated above, Petitioners' motion to confirm the Temporary Order of Attachment is denied, and the Order at ECF No. 13 is vacated. In light of the Court's ruling,

Petitioners' motion for disclosure pursuant to CPLR § 6620 is denied. *See Fratelli Italiani, LLC v. Mironova*, No. 18-CV-7013, 2019 WL 3759160, at *13 (S.D.N.Y. Apr. 11, 2019). The Clerk of Court is respectfully requested to terminate all pending motions. Within one week of the date of this Order, the parties shall advise the Court whether they anticipate any further applications in this action.

SO ORDERED.

Dated:   January 30, 2025
         New York, New York

Ronnie Abrams
United States District Judge