UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLUE AXIS GLOBAL LTD & LONGBYTE INC., <br><br> Petitioners, <br><br> v. <br><br> ALOPEX ADVISORS, LLC, <br><br> Respondent. | 24-mc-508 (RA) |

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S MOTION FOR ATTORNEYS' FEES**

ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York  10019
Telephone: (212) 506-5000
jkeighley@orrick.com

*Attorney for Respondent Alopex Advisors, LLC.*

4133-7547-1193.3

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT & BACKGROUND ................................................................. 1

ARGUMENT .................................................................................................................................. 3

1. THE LAW REQUIRES PETITIONERS TO PAY ALOPEX ATTORNEYS' FEES AND COSTS ................................................................................................................. 3

2. THE ATTORNEYS' FEES ALOPEX REQUESTS ARE REASONABLE ..................... 5

CONCLUSION ............................................................................................................................... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. Israel Commodity Co. v. Banco Do Brasil, S.A.*,
   270 N.Y.S.2d 283 (Sup. Ct., NY Cty. 1966) ...................................................................3, 4, 8

*Citibank, N.A. v. Keenan Powers & Andrews PC*,
   149 A.D.3d 484 (App. Div. 1st Dept. 2017)................................................................................4

*Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.*,
   524 F. Supp. 2d 412 (S.D.N.Y. 2007)....................................................................................5, 8

*Globex Int'l. Inc. v. Com. Bank of Namibia Ltd.*,
   1999 WL 1211827 (S.D.N.Y. Dec. 17, 1999) ...........................................................................2

*Jalas v. Halperin*,
   25 N.Y.S.3d 264 (App. Div. 2d Dept. 2016) .............................................................................4

*Luciano v. Olsten Corp.*,
   109 F.3d 111 (2d Cir. 1997)...................................................................................................5, 6

*Merck & Co. v. Tecnoquimicas S.A.*,
   2001 WL 963977 (S.D.N.Y. Aug. 22, 2001).........................................................................3, 4

*Themis Cap. v. Dem. Rep. of Congo*,
   2016 WL 817440 (S.D.N.Y. Feb. 22, 2016)..............................................................................6

*Victrix S.S. Co. v. Salen Dry Cargo A.B.*,
   825 F.2d 709 (2d Cir. 1987).......................................................................................................4

*Vista Outdoor, Inc. v. Reeves Family Trust*,
   2018 WL 3104631(S.D.N.Y. May 24, 2018) ............................................................................6

*Winklevoss Cap. Fund, LLC v. Shrem*,
   360 F. Supp. 3d 251 (S.D.N.Y. 2019)....................................................................................3, 6

**Statutes**

NY CPLR § 6211(a) .......................................................................................................................1

NY CPLR § 6212................................................................................................................. *passim*

NY CPLR § 6620............................................................................................................................1

**Other Authorities**

HKIAC Rules Article 23.3(c) ...................................................................................................7

HKIAC Rules Article 45 ..........................................................................................................7

**PRELIMINARY STATEMENT & BACKGROUND**

Alopex Advisors, LLC ("Alopex") seeks an award of reasonable attorneys' fees associated with its successful opposition to Blue Axis Global LTD and Longbyte Inc.'s ("Petitioners") motion to confirm the Court's Temporary Order of Attachment in Aid of Arbitration (the "Petition"), pursuant to New York Civil Practice Law and Rule § 6212(e) ("CPLR").

On November 6, 2024, to secure satisfaction of a potential award in an arbitration then pending in Hong Kong, Petitioners filed an *ex parte* petition with this Court for a Temporary Order of Attachment pursuant to CPLR § 6211(a), just weeks before the arbitral hearing was to begin. The Court granted the *ex parte* petition on November 13, 2024. ECF No. 13. After the Court granted the Petition, the Parties attempted to resolve the dispute without the need for further court intervention. *See* ECF Nos. 14, 16. Those negotiations ultimately were not fruitful because Petitioners insisted that Alopex grant them a formal security interest in assets worth at least $3 million, and/or a letter of credit for the same amount. Declaration of Ben Au ["Au Decl."] ¶ 8. Alopex refused to agree to those conditions since it did not believe that Petitioners were entitled to a writ of attachment in the first place. *Id.* Petitioners thereafter moved to confirm the Court's temporary order on December 4, 2025. ECF No. 18.

Petitioners also unsuccessfully sought discovery in connection with their Petition. On December 5, 2025, Petitioners filed a Letter Motion for Expedited Discovery seeking disclosure pursuant to CPLR § 6620 to identify Alopex's other assets beyond the account which they had attached. ECF No. 24. Alopex submitted a letter brief in opposition explaining why such discovery was unwarranted since the Court had yet to determine whether the attachment should be confirmed, ECF No. 28, and the Court held an in-person conference to discuss the discovery dispute on December 18, 2024, ECF No. 31. The Court agreed with Alopex that the Court

should defer ruling on the request for expedited discovery until after it decided whether to confirm the Temporary Attachment Order.  ECF No. 32.  On December 20, 2024, Alopex filed its opposition to Petitioners' motion to confirm.  That voluminous filing addressed, among other things, Petitioners' arguments that they were likely to prevail in a then-pending arbitration brought under Hong Kong law, for which the arbitral hearing had recently concluded, and whether a hypothetical arbitration award to Petitioners would be rendered ineffectual absent attachment.  ECF No. 33.

In a January 30, 2025 Order, the Court denied Petitioners' motion to confirm, vacating its November 13, 2024 Temporary Order of Attachment and denying Petitioners' motion for expedited discovery.  ECF No. 41.  The Court agreed with Alopex that "Petitioners ha[d] not met their burden of establishing a likelihood of success on their claim that Alopex breached" the contract at issue, or that they were likely to prevail on "their equitable theories" for relief.  *Id.* at 6-7.  As a result of Petitioners' unlikelihood of success "on any of their claims," the Court concluded that Petitioners "have failed to demonstrate a probability of success in the Arbitration," and denied the motion to confirm.  *Id.* at 7.

New York law requires reasonable attorneys' fees and costs associated with a wrongful attachment, like this one, to be awarded to the prevailing party, in this case Alopex.  *See* N.Y. CPLR § 6212(e) ("The plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment … if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property.").

Such an award is not discretionary; the statute's standard is strict liability.  *See Globex Int'l. Inc. v. Com. Bank of Namibia Ltd.*, 1999 WL 1211827, at *1 (S.D.N.Y. Dec. 17, 1999)

(Under Rule 6212(e), a plaintiff is "strictly liable for all costs and damages, including attorney's fees, caused by wrongful attachment" where the property is actually attached.); *A.C. Israel Commodity Co. v. Banco Do Brasil, S.A.*, 270 N.Y.S.2d 283, 286 (Sup. Ct., NY Cty. 1966) (As long as the attorneys' fees incurred by the defendant were the "natural and proximate consequence of the wrongful attachment," the plaintiff is liable for them.). "Thus, New York law requires an award of fees by virtue of the fact that the attachment was vacated as unwarranted." *Merck & Co. v. Tecnoquimicas S.A.*, 2001 WL 963977, at *3 (S.D.N.Y. Aug. 22, 2001).

Here, Alopex seeks an award of $256,618.60 for its reasonable attorneys' fees in opposing the motion to confirm, and at least $42,647.50 for its reasonable attorneys' fees incurred thus far in seeking to recover the underlying fees. Au Decl. ¶¶ 11-12.

## ARGUMENT

Under New York law, Petitioners owe Alopex reasonable attorneys' fees and costs that are the "natural and proximate cause" of the Petition.

### 1. The Law Requires Petitioners to Pay Alopex Attorneys' Fees and Costs

A prejudgment order of attachment, like the one Petitioners received, is governed by New York Civil Practice Law & Rules § 6212, and subsection (e) of that provision states:

> The plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment, or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property.

Both New York and federal courts reviewing the statute have held that an award for reasonable attorneys' fees and costs is required where, as here, an attachment order is vacated after property was attached. *See Winklevoss Cap. Fund, LLC v. Shrem*, 360 F. Supp. 3d 251, 256 (S.D.N.Y. 2019) ("Rule 6212(e) explicitly includes attorneys' fees as part of these costs on the

understanding that attorneys' fees incurred attempting to remove an attachment are damages resulting from that attachment."); *Merck & Co.*, 2001 WL 963977, at *3 ("[I]t is significant that § 6212(e) is not worded in the conditional; it states that fees 'shall' be awarded to a defendant whose assets were wrongfully attached."); *Citibank, N.A. v. Keenan Powers & Andrews PC*, 149 A.D.3d 484, 485 (App. Div. 1st Dept. 2017) ("a finding of fault is not required to recover damages under this provision, as plaintiffs are 'strictly liable' for the damages they caused") (quoting *Bank of N.Y. v. Norilsk Nickel*, 14 A.D.3d 140, 149 (1st Dept. 2004), appeal dismissed 4 N.Y.3d 846 (2005)).

Section 6212 does not limit the time period for which a defendant may recover damages arising from the attachment but, rather, permits a defendant to recover "all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment." *Jalas v. Halperin*, 25 N.Y.S.3d 264, 265 (App. Div. 2d Dept. 2016). Thus, a decision on the underlying merits of the arbitration is not required before reasonable attorneys' fees and costs are awarded under the statute. *See Victrix S.S. Co. v. Salen Dry Cargo A.B.*, 825 F.2d 709 (2d Cir. 1987)) ("A dismissal of the case or of the attachment on any basis, procedural or substantive, is sufficient to support an award of damages and attorney's fees.").

Petitioners are "strictly liable" to Alopex "for all costs and damages, including reasonable attorney's fees" sustained as a result of the attachment given that this Court has ruled that Petitioners were not entitled to an attachment of Alopex's property. N.Y. CPLR § 6212(e). The reasonable attorneys' fees and costs Alopex expended to vacate the order of attachment were indisputably the "natural and proximate consequence of the wrongful attachment." *See A.C. Israel*, 270 N.Y.S.2d at 286.

Courts assessing motions for fees under CPLR § 6212(e) have awarded fees flowing from all litigation related to a wrongful attachment, including fees incurred in connection with discovery proceedings and appeals. *See Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.*, 524 F. Supp. 2d 412, 425 (S.D.N.Y. 2007) (awarding $2,102,870.48 in damages pursuant to CPLR § 6212(e) for the attorneys' fees and costs incurred over six-year period, including in connection with discovery over the court's subject matter jurisdiction). Furthermore, courts have recognized that fees incurred in connection with litigation over the propriety of the fee award, *e.g.*, fees on fees, are likewise recoverable under CPLR § 6212(e). *See id.* (recognizing that party opposing attachment had incurred "substantial additional attorneys' fees and costs in th[e] action" regarding the fee award and directing that party to "submit proof of any additional damages within 30 days").

**2.  The Attorneys' Fees Alopex Requests Are Reasonable**

In connection with the process of mounting an effective and vigorous successful opposition to Petitioners' motion to confirm and motion for expedited discovery, Alopex incurred $256,618.60 in attorneys' fees (after omitting certain fees described below) for which it seeks reimbursement from Petitioners. Au Decl. ¶ 12 & Ex. A. Alopex has additionally incurred $42,647.50 in legal expenses in connection with its efforts to recover its attorneys' fees as of February 19, 2025. Au Decl. ¶ 13 & Ex. A. That figure continues to increase, and Alopex reserves the right to update the total amount listed above at the conclusion of briefing on the fee petition. Based on all the relevant factors, this represents a reasonable amount.

To determine a reasonable hourly rate, courts look to the rates for comparable legal services in the local community. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("In determining reasonable attorney's fees, the district court must calculate a 'lodestar' figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a

reasonable hourly rate.  The 'lodestar' figure should be 'in line with those [rates] prevailing in the community [in which the district court sits] for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" (first alternation in original) (citation omitted)).  "When granting fee awards, district courts are given 'broad discretion' in determining what is reasonable under the circumstances." *Winklevoss*, 360 F. Supp. 3d at 256 (quoting *Luciano*, 109 F.3d at 115.)  "In determining reasonable attorney's fees, the district court must calculate a 'lodestar' figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate." *Luciano*, 109 F.3d at 115.  "In determining reasonable hourly rates, the Court considers the range of rates that plaintiff's counsel actually charge their clients and whether those rates are in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Winklevoss*, 360 F. Supp. 3d at 257 (internal citations and quotation marks omitted).

The hourly rates requested by Alopex's counsel ($1,080 - $1,620) are reasonable because they are typical of fees charged by lawyers of similar levels of seniority at similar law firms litigating similar matters in the Southern District of New York.  Au Decl. ¶ 15.  A case in this district nearly ten years ago awarded fees ranging from $435/hour for a first-year associate to $1,000/hour for a partner with 20 years of experience. *Themis Cap. v. Dem. Rep. of Congo*, 2016 WL 817440, at *4 (S.D.N.Y. Feb. 22, 2016).  Because rates normally increase over time due to inflation and market conditions, the rates for the Orrick attorneys sought here, which range from $1,080/hour (in 2024) to $1,620/hour (in 2025), are clearly within the customary range. *See Vista Outdoor, Inc. v. Reeves Family Trust*, 2018 WL 3104631 (S.D.N.Y. May 24, 2018) (awarding rates for associates from Gibson Dunn & Crutcher ranging from $615/hour to $925/hour in 2018).

The work performed by counsel was reasonable given the complexities of the underlying foreign arbitration proceeding (governed by Hong Kong law), the need for Alopex's counsel to brief the likelihood of success on the merits in that ongoing proceeding, Petitioners' efforts to seek premature expedited discovery into Alopex's assets, and the Parties' unsuccessful attempts to negotiate a resolution of the dispute without the need for Court intervention. Furthermore, Petitioners' decision to seek a pre-judgment writ of attachment immediately prior to the arbitral hearing—while Alopex's arbitration team was in final preparation for that hearing—necessitated bringing in a new team to litigate over the propriety of the writ, which increased the fees incurred. And that team was staffed very leanly, with just one partner (Ms. Keighley, $1,220 an hour in 2024) and one associate (Ms. Anderson, $1,080 an hour in 2024) performing the vast majority of the work. Furthermore, given that a separate team handled the writ proceedings in New York, there is no risk that any of the work performed by Ms. Keighley or Ms. Anderson overlaps with work that would have been performed in any event as part of the underlying arbitration. Ms. Keighley and Ms. Anderson only performed work in connection with the writ proceedings and Petitioners' unsuccessful efforts to obtain expedited discovery into Alopex's assets in connection with the writ.

If Petitioners had wanted to avoid the risk of incurring significant liability for attorneys' fees and costs based on an unsuccessful attachment order, they could have simply obtained information about Alopex's ability to satisfy an award through the confidential HKIAC proceedings (or waited for the conclusion of the arbitration), *see* HKIAC Rules Articles 23.3(c) & 45, or they could have reached a negotiated resolution with Alopex on the writ proceedings. Instead, Petitioners (1) sought a writ of attachment—"an extraordinary process, often causing great damages, and is designed, ordinarily, for the purpose of being used sparingly only," *A.C. Israel*,

270 N.Y.S.2d at 286—on the eve of the arbitral hearing in Hong Kong; (2) moved to confirm that attachment order; and (3) attempted to obtain expedited discovery into Alopex's assets. On these facts, the damages proximately caused by the wrongful attachment should be "measured by the vigor with which [Petitioners] sought to sustain the attachment." *Correspondent Servs. Corp.*, 524 F. Supp. 2d at 419.

Moreover, Alopex's request is reasonable because Alopex only requests reimbursement of its attorneys' fees for those legal services which were incurred by its U.S.-based litigation team, and not for fees for services rendered by its European-based attorneys or staff members who assisted in preparing the papers in this proceeding (including the submission of a declaration by Mr. James Hargrove), but who were primarily focused on preparing for final written and oral submissions to the Hong Kong arbitrator. Au Decl. ¶¶ 10-11. Alopex also is not seeking its fees incurred in connection with a potential motion to seal the confidential arbitration papers Petitioners attached as exhibits to their Petition. Au Decl. ¶ 11. The discounted amount requested is thus both conservative and reasonable. Au Decl. ¶ 11. Moreover, Alopex is not seeking reimbursement for its out-of-pocket litigation costs, although it is entitled to do so. *See* N.Y. CPLR § 6212 (e).

## CONCLUSION

For the reasons set forth above, Alopex submits that the requested attorneys' fees are a natural and proximate consequence of Petitioners' wrongful attachment and are reasonable. Because paying these fees is mandatory under applicable law, the Court should grant this motion for attorneys' fees in the total amount of at least $299,266.10.

- 9 -

Dated: New York, New York

February 20, 2025

                                       Respectfully submitted,

                                       ORRICK, HERRINGTON & SUTCLIFFE LLP

                                       By: /s/*Jennifer M. Keighley*
                                            Jennifer M. Keighley

                                            51 West 52nd Street
                                            New York, New York  10019
                                            Telephone: (212) 506-5000
                                            jkeighley@orrick.com

                                            *Attorney for Respondent Alopex Advisors, LLC.*

## CERTIFICATE OF COMPLIANCE

I certify that, excluding the caption, table of contents, table of authorities, signature block and this certification, the foregoing Memorandum of Law in Support of Respondent's Motion For Attorneys' Fees contains 2,502 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: February 20, 2025

*/s/ Jennifer M. Keighley*
Jennifer M. Keighley
