UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BLUE AXIS GLOBAL LTD and LONGBYTE INC.,

                        Petitioners,

          -against-

ALOPEX ADVISORS, LLC,

                        Respondent.

------------------------------------------------------------X

24-MC-00508 (SN)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/9/2025

**SARAH NETBURN, United States Magistrate Judge:**

       Alopex Advisors, LLC ("Respondent") moves under New York Civil Practice Law and Rules ("CPLR") 6212(e) for $256,618.60 for fees incurred in vacating the Temporary Order of Attachment in Aid of Arbitration ("Temporary Order") obtained *ex parte* by Blue Axis Global LTD and Longbyte Inc. ("Petitioners"). Respondent also seeks $77,069.50 in fees incurred filing this motion for attorneys' fees. Petitioners oppose the motion. Initially, they argued that the fee award should be reduced to $75,000. But after Petitioners prevailed in the underlying arbitration in Hong Kong, they argue that no fees are appropriate.

       Respondent also moves to seal Exhibit A to the Declaration of Ben Au in Support of Respondent's Motion and Exhibit A to the Declaration of Ben Au in Support of Respondent's Reply. ECF Nos. 44, 54. Petitioners object to the filing under seal. They ask the Court "not [to] consider any records filed *ex parte*" and to base the decision "exclusively upon the time entries disclosed to Petitioners' counsel by Alopex," submitted by Petitioners as Exhibit A to the Declaration of Stan Chelney. Opp'n Br. at 3.

For the reasons discussed below, Respondent is entitled to fees incurred in vacating the Temporary Order but not for fees incurred in seeking those fees. The Court, however, has outstanding questions regarding the fees that are appropriately sought. Accordingly, and for the reasons stated, Respondent's motion to seal their fees records is denied, with limited exception. Respondent shall file a supplemental declaration addressing the Court's questions.

## BACKGROUND

This case arises out of Petitioners' November 6, 2024 *ex parte* application under Rule 64 of the Federal Rules of Civil Procedure and Articles 62 and 75 of the CPLR. Petitioner sought a temporary order of attachment in aid of an arbitration to secure satisfaction of a potential award against Respondent in a then-ongoing arbitration in Hong Kong. ECF No. 1. The Honorable Ronnie Abrams, to whom this case was then assigned, issued a Temporary Order of attachment on November 13, 2024. ECF No. 13. Petitioners subsequently filed a motion to confirm the Temporary Order, and the Court ordered Petitioners to serve the motion to confirm on Respondent. ECF Nos. 18, 23. Petitioners first filed a letter motion for discovery on December 5, 2024, seeking expedited discovery on Respondent to identify assets, pursuant to CPLR § 6620. ECF No. 24. Petitioners served Respondent the next day. ECF No. 25.

Respondent appeared in this case on December 10, 2024. ECF No. 27. That same day, it filed a three-page response to Petitioners' letter motion for discovery. ECF No. 28. The Court held a conference on the discovery motion but decided to hold its decision in abeyance pending a decision on the motion to confirm the Temporary Order, concluding that if the attachment was not warranted, then the discovery motion would be necessarily denied. ECF No. 32.

On January 30, 2025, the Court issued an Opinion and Order denying Petitioners' motion to confirm the Temporary Order of Attachment and vacating the same. ECF Nos. 38–40, 41.

2

This motion for attorneys' fees followed, and the parties consented to my jurisdiction. ECF No. 59. By the time Respondent's fee motion was fully briefed, its involvement in this case spanned approximately three months, from December 10, 2024, to March 17, 2025. Respondent claims it worked almost 280 hours in opposing the discovery motion, opposing the motion to confirm, and filing this motion for fees. See Decl. of Ben Au in Supp. of Resp't Mot. for Attorneys' Fees ("First Au Decl."), at 5; Decl. of Ben Au in Supp. of Resp't Reply in Supp. of Mot. for Attorneys' Fees ("Second Au Decl."), at 1–2.

While the fee motion was pending, the underlying arbitration in Hong Kong concluded in Petitioners' favor, and Petitioners were awarded $4 million. ECF No. 60. In light of their success in the arbitration, Petitioners argue that the fee motion should be denied. The parties filed additional letters on this issue. ECF Nos. 62-64.

## DISCUSSION

### I. The Availability of Fees

Rule 6212(e) provides:

> The plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment, or *if it is finally decided that the plaintiff was not entitled to an attachment* of the defendant's property.

N.Y. CPLR 6212(e) (emphasis supplied). Petitioners argue that, because they prevailed in the Hong Kong arbitration, it was not "finally decided" that they were not entitled to the attachment. They further argue that it would be unjust to allow Respondent to be awarded attorneys' fees for opposing the attachment when they now are refusing to pay the arbitral award. Respondent disagrees, arguing that the Court's decision vacating the Temporary Order was a final decision in this case—from which the Petitioners never appealed—and therefore it was "finally decided" that the Petitioners were not entitled to an attachment.

3

Respondent has the prevailing argument. CPLR 6212(e) was "added in 1977 to make the attaching plaintiff strictly liable for all damages occasioned by a wrongful attachment." Roth v. Pritikin, 787 F.2d 54, 59 (2d Cir. 1986) (citing commentary to Rule 6212(e)); see also Merck & Co. v. Technoquimicas S.A., No. 01-CV-5345 (NRB), 2001 WL 963977, at *3 (S.D.N.Y. Aug. 22, 2001) (noting that "it is significant that § 6212(e) is not worded in the conditional; it states that fees 'shall' be awarded to a defendant whose assets were wrongfully attached"). This reflects the "well settled" view that "the extraordinary remedy of attachment [is] strictly construed in favor of the party whose property is sought to be attached." Provisional Protective Comm. v. Williams, 121 A.D.2d 271, 273 (1st Dep't 1986).

First, Petitioners argue that, on the *merits*, its motion for attachment was "finally decided" in its favor by virtue of their success in the Hong Kong arbitration. But CPLR 6212(e) does not inquire into the outcome of a related proceeding. Rather, it concerns only the correctness of an attachment order. See Rashi Textiles, U.S.A., Inc. v. Rhomberg Textil Gesellschaft M.B.H., of Austria, 857 F. Supp. 1051, 1056–57 (S.D.N.Y. 1994) ("The vacatur of an order of attachment has been considered a final decision that entitles a defendant to fees and costs pursuant to CPLR Section 6212(e)."). "A defendant is not required to prevail on the merits in order for the court to award damages." Id. at 1054 (citing cases); see also Merck & Co, 2001 WL 963977, at *2 (granting fees under Rule 6212(e) even though the party that sought the attachment prevailed in the underlying arbitration). So long as a court concludes that the property was wrongly attached, Rule 6212(e) requires an award of damages, including reasonable attorneys' fees.

Astra Oil Trading v. PRSI Trading Co. LP, cited by Petitioners, does not warrant a different result. 794 F. Supp. 2d 462 (S.D.N.Y. 2011). There, one attachment was vacated (on

4

procedural grounds) just as another was entered. See id. at 473 n.8 ("we wish to stress our intention that there be no daylight between the vacatur of the first attachment and the issuance of the second"). Thus, it can hardly be stated that it was "finally decided" that the plaintiff was not entitled to an attachment when the court denied defendant an attorneys' fees award.

Second, Petitioners appeal to the equities, arguing that Respondent will ultimately be required to pay based on the arbitral award. This argument ignores the simplicity of the Rule: a plaintiff is liable "for all costs and damages, including reasonable attorney's fees" where plaintiff is granted an attachment to which it is later found unentitled. N.Y. CPLR 6212(e); see Correspondent Serv. Corp. v. J.V.W. Inv. Ltd., 524 F. Supp. 2d 412, 424 (S.D.N.Y. 2007) (denying a stay of the Rule 6212(e) award until the merits of the underlying litigation is resolved for purposes of a purported "set off"); see also Winklevoss Capital Fund, LLC v. Shrem, 360 F. Supp. 3d 251, 255 (S.D.N.Y. 2019) (rejecting a "no harm" approach to a Rule 6212(e) award). Thus, the outcome of the Hong Kong arbitration is of no moment; the Court concluded that the Temporary Order should be vacated, and the CPLR mandates an award of any damages, including attorneys' fees, the Respondent incurred. Because CPLR 6212(e) requires that the Court award fees when attachment is vacated as unwarranted, Respondent is entitled to reasonable attorneys' fees expended in vacating the attachment. That Petitioners ultimately prevailed in the underlying litigation does not change this conclusion.

## II.  The Availability of Fees on Fees

While Respondent is entitled to fees incurred in vacating the Temporary Order, it is not entitled to the fees incurred for this fee motion. Respondent seeks an additional $77,069.50 for so-called "fees on fees," that is, fees incurred filing its motion for attorneys' fees. It argues that an award of attorneys' fees incurred in filing a fee motion is required under CPLR 6212(e)

because such fees were sustained "by reason of" the attachment. Respondent does not cite to any case that has awarded fees on fees in the CPLR 6212(e) context, and the Court has been unable to find one.[1]

Under New York law, "an award of fees on fees must be based on a statute or on an agreement." 546-552 West 146th St. LLC v. Arfa, 99 A.D.3d 117, 120 (1st Dep't 2012) (quoting Sage Realty Corp. v. Proskauer Rose LLP, 288 A.D.2d 14, 15 (1st Dep't 2001)). If the relevant statute does not "explicitly grant courts the authority to award fees on fees," they should not be awarded. Sage Realty Corp., 288 A.D.2d at 14; see also Matter of Lillian G., 208 A.D.3d 871, 875 (2d Dep't 2022) (when there is an "absence of unmistakably clear intent regarding the recovery of fees on fees, a right to recover those fees should not be implied").

In Winklevoss Capital, the Court emphasized that "Rule 6212(e) authorizes the award of only those attorneys' fees that are 'the natural and proximate consequence of the wrongful attachment.'" 360 F. Supp. 3d at 257 (quoting A.C. Israel Commodity Co. v. Banco Do Brasil, S.A., 270 N.Y.S.2d 283, 286 (N.Y. Sup. Ct. 1966)). Thus, that court limited the party's fee award to "tasks specific to the order of attachment" and excluded fees that are the "cost of litigation." Id. at 257–58.

The absence of caselaw authorizing fees on fees under Rule 6212(e) is disquieting given the number of Rule 6212(e) cases more generally. Moreover, the New York Court of Appeals has been reluctant to find an implied right to fees on fees in other contexts. In Baker v. Health Management Systems Inc., 98 N.Y.2d 80 (2002), the New York State Court of Appeals

---

[1] Respondent cites to Globex Intern. Inc. v. Commercial Bank of Namibia Ltd., No. 99-CV-4789 (JSM), 1999 WL 1211827 (S.D.N.Y. Dec. 17, 1999). This case concerned attorneys' fees under CPLR § 6313(c), and not CPLR 6212(e), and in any event did not award fees on fees. Respondent also cites to Correspondent Servs Corp., 524 F. Supp. 2d at 425, which authorized fees for "repeated appeals" but did not address fees on fees.

6

considered a question, certified by the Court of Appeals for the Second Circuit, of whether Business Corporation Law § 722(a) authorized an award of "fees on fees." Id. at 84. The Court of Appeals concluded that the statute's language – "actually and necessarily incurred as a result of" a successful indemnification motion – did not encompass a right to fees on fees. Id. at 89. The Court of Appeals relied primarily on the statutory text and legislative history, but it further held that "the 'American Rule' jurisprudence of this Court and the Supreme Court of the United States would militate against adoption" of an implied right to fees on fees. Id. at 88.

Damages "incurred by reason of" attachment are no different. Attorneys' fees expended in preparing this motion for fees do not have a "reasonably substantial nexus" to the underlying attachment proceedings and are not recoverable under CPLR 6212(e). Id. at 85. Accordingly, the Court finds that Respondent is not entitled to fees incurred in filing this fee motion.

### III. Motions to Seal

Respondent filed two motions to seal its billing records, which are attached as exhibits to the First and Second Au Declarations. ECF Nos. 44, 55. Petitioners do not oppose these motions in formal briefs, though they contend in their opposition brief that filing the records under seal violates due process. Opp'n Br. at 3. They ask the Court not to consider the sealed exhibits when deciding the motion.

#### A. Legal Standard

Generally, the public has a common law right of access to judicial documents. Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597–98 (1978). "The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." United States v. Erie Cnty., 763 F.3d 235, 238–39 (2d Cir. 2014). "Indeed, the common law right of public access to judicial documents is said to predate even the Constitution itself." Id. at 239.

A party seeking to seal documents submitted to a court bears the burden of showing that sealing is proper. See DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir. 1997). Ultimately the decision to seal "is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Nixon, 435 U.S. at 599.

The Court must first determine whether the documents sought to be sealed are judicial documents. "[T]o be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006) (internal quotation marks omitted). Judicial documents are presumptively public so that the federal courts "have a measure of accountability" and so that the public may "have confidence in the administration of justice." United States v. Amodeo ("Amodeo II"), 71 F.3d 1044, 1048 (2d Cir. 1995). But "the fact that a document is a judicial record does not mean that access to it cannot be restricted." United States v. Amodeo ("Amodeo I"), 44 F.3d 141, 146 (2d Cir. 1995).

Second, once the Court deems a document a judicial document, "the common law right attaches with different weight depending on two factors: (a) the role of the material at issue in the exercise of Article III judicial power and (b) the resultant value of such information to those monitoring the federal courts." Newsday LLC v. Cnty. of Nassau, 730 F.3d 156, 165 (2d Cir. 2013) (internal quotations marks omitted) (citing Amodeo II, 71 F.3d at 1049). When a document plays a role in a court's adjudication of litigants' substantive rights, the presumption is strong, but "[a]s one moves along the continuum, the weight of the presumption declines." Amodeo II, 71 F.3d at 1049.

Third, the Court must balance any "competing considerations" against the weight of the presumption of access. Lugosch, 435 F.3d at 120. "[A]ttorney-client privilege might well be [] a compelling reason" to permit sealing. Id. at 125.

B. Application

The common law right of access applies to Respondent's billing records. First, the exhibits are judicial documents. See Mirlis v. Edgewood Elm Housing Inc., 581 F. Supp. 3d 394, 406 (D. Conn. 2022), amended on reconsideration, 2022 WL 522109 (D. Conn. Feb. 21, 2022) (finding that affidavits discussing legal fees were judicial documents because they bore directly on the court's adjudication of a motion to modify a temporary restraining order to pay legal fees and costs). The exhibits attached to Respondent's two declarations form the very basis of the motion for attorneys' fees. They detail the billing rates, hours billed, and legal work performed by Respondent's attorneys, and the Court must review these exhibits to decide the motion. Therefore, the exhibits are "judicial documents" subject to the presumption of public access.

The presumption of public access cannot be overcome by Respondent's unspecified assertions of privilege and competitive disadvantage. In its motion to seal, Respondent contends that it is "necessary" to keep the complete billing records under seal because "they contain privileged information . . . related to services Orrick has provided in connection with the underlying Hong Kong-based arbitration." Mot. to Seal, at 1. Respondent does not explain what types of privileged information the records contain. The Court of Appeals has consistently held that, "absent special circumstances, client identity and fee information are not privileged." In re Grand Jury Subpoena Served Upon Doe, 781 F.2d 238, 247–48 (2d Cir. 1986). A general assertion of privilege is thus not a basis for sealing these records.

9

Respondent further argues that the billing records contain "proprietary information," but it does not specify what proprietary information risks being exposed if the records are made public. Mot. to Seal, at 2. Though Respondent cites law reiterating the rule that documents may be sealed with "specific, on-the-record findings" justifying sealing, Respondent provides no such specific reasons for sealing. Id. Respondent merely states that the "general description" of the records in Mr. Au's declaration is sufficient to inform the public without providing access to detailed records. Id. But a "general description" would not have been sufficient for the Court in analyzing the appropriateness of the fee request, and a general description is not sufficient for the public to monitor the federal courts. NetSoc, LLC v. Chegg Inc., No. 18-CV-10262 (RA), 2020 WL 7264162, at *3 (S.D.N.Y. Dec. 10, 2020) (finding that the weight afforded to the presumption of public access is higher where the parties had not settled attorneys' fees, so it fell upon the court to evaluate the records and impose fees); Mirlis, 581 F. Supp. 3d at 408 (denying both a "blanket" request to seal and a narrower request to redact portions of exhibits discussing specific amounts of legal fees because the claim that fees are "sensitive financial matters" is insufficient to negate the presumption of public access). Respondent has not provided sufficient justification to overcome the strong presumption of public access.

Because attorney-client privilege is a countervailing reason that may overcome the presumption of public access, Respondent may redact portions of the exhibits that reflect privileged information. Excellent Home Care Servs., LLC v. FGA, Inc., No. 13-CV-5390 (ILG)(CLP), 2017 WL 4838306, at *7 (E.D.N.Y. Oct. 24, 2017) (ordering public filing of billing entries but permitting the party to redact so as not to reveal privileged communications). Respondent is cautioned that most of the information contained in its sealed exhibits does not fall

under the attorney-client privilege. Redactions should be minimal, limited to privileged information in the "Narrative" columns of the exhibits.

Therefore, the motions to seal the exhibits to both declarations are DENIED with limited exceptions. By September 19, 2025, Respondent shall file both exhibits publicly on the docket with appropriate, limited redactions for attorney-client privilege.

## IV.     Supplement Declaration

In reviewing Respondent's billing records, certain issues were unclear. The Court believes that its review will be assisted by the public filing of the records and an opportunity for Petitioners to respond. Still, the Court requests that Respondent file an attorney declaration clarifying certain matters.

First, the Court's calculation of the billed time suggests that the total lodestar for work performed before January 30, 2025, is $272,547.79, which is $15,929.19 greater than the lodestar that Respondent provided.

Second, Respondent's records reflect work performed by Benjamin Stafford and Julia Wilson. Neither attorney was identified in Respondent's motion, including a description of their experience and credentials, and the time to support their work has expired. See Wells Fargo Tr. Co. v. Fast Colombia S.A.S., No. 23-CV-603 (PGG)(RWL), 2023 WL 8591953, at *7 (S.D.N.Y. Oct. 16, 2023), report and recommendation adopted, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023) (finding that when a fee applicant "has not even provided the most basic information necessary to assess the reasonableness of rates: the years of experience of the particular attorneys and the type of experience they have had," the court may reduce a fee award accordingly). Still, the Court has attempted to calculate the hours they performed to determine whether their hours are (improperly) included in the $256,618.60 that Respondent seeks for vacating the Temporary

Order. The Court has calculated that Mr. Stafford billed $38,295.00 and Ms. Wilson billed $5,879.70. If these numbers are subtracted from $272,547.79, the result is less than the lodestar Respondent seeks; if these numbers are subtracted from Respondent's lodestar, the corrected lodestar is $228,373.09.

Third, Respondent claims that it is not seeking fees for an unfiled motion to seal the arbitration papers that Petitioners attached as exhibits to their Petition. Yet, the billing records include numerous time entries for work on this motion. And some of the time spent on this unfiled motion to seal is included in larger block billed entries, making it challenging for the Court to subtract out the time spent on the unfiled sealing motion.

A supplemental attorney declaration is required to clarify these points and others. The attorney declaration shall affirm, for work performed before January 30, 2025, how many hours each attorney (for whom fees are sought) billed, at which rate, and their individual lodestar.[2] The attorney declaration shall also provide a total lodestar sought. The Court is not, however, seeking an amended billing record, as the time to file its record has passed.

## CONCLUSION

Respondent is entitled for fees for successfully vacating the Temporary Order, but it is not entitled to fees for the motion seeking such fees. Respondent's motion to seal its billing records is DENIED, with limited exceptions. By September 19, 2025, Respondent shall file its billing records on the public docket, with limited redactions only to preserve attorney-client communications. By that same date, Respondent shall file a supplemental attorney declaration that states clearly how many hours each attorney (for whom fees are sought) billed, at which rate,

---

[2] The Court notes, for example, that the lodestar calculation for Jennifer M. Keighley that Respondent provided in the First Au Declaration does not total $132,254.00, as Respondent claims. First Au Decl., at 5. The total hours worked by Ms. Keighley before January 30, 2025 (108.1 hours) multiplied by Ms. Keighley's hourly rate ($1,220.00 per hour) should result in a lodestar of $131,882.00.

12

and their individual lodestar. The attorney declaration shall also provide a total lodestar sought for work performed before January 30, 2025. Within 14 days of service of the unsealed billing records and the supplemental attorney declaration, Petitioners may file a letter, of not more than three pages, responding to any issues raised by Respondent.

Separately, the parties are ORDERED to meet and confer in an attempt to resolve this dispute without further judicial intervention. To the extent the parties can settle this matter, they shall notify the Court immediately.

The Clerk of Court is respectfully requested to terminate the motions at ECF Nos. 44 and 55.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:    September 9, 2025
         New York, New York